**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

MICHAEL DEMPSEY
and GORDON DICKMAN,

      Plaintiff,

      v.

KOHL'S DEPARTMENT STORES, INC.,

      Defendant

Case No.: _____

Jury Trial Demanded

## COMPLAINT

NOW COME Plaintiffs Michael Dempsey ("Dempsey") and Gordon Dickman ("Dickman"), by their attorneys, Cade Law Group LLC, and for their Complaint against Kohl's Department Stores, Inc. ("Kohl's"), and alleges:

### INTRODUCTION

1. This is a civil action about age discrimination in the workplace in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 623 *et seq*. As alleged with greater particularity below, Kohl's engaged in unlawful discrimination by terminating Dempsey and Dickman, and others at Kohl's, on the basis of their age and due to their compensation.

2. This also is an action under Wisconsin state law, including for violations of Wisconsin's Fair Employment laws, Wis. Stat. §§ 111.31 *et seq.*

### JURISDICTION

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

1337, and 1343.

4.	Plaintiff Michael Dempsey has complied with all jurisdictional prerequisites to action by timely filing a charge of discrimination with the EEOC. Attached hereto and incorporated herein as **<u>Exhibit A</u>** is a true and correct copy of Dempsey's charge of discrimination with the EEOC.

5.	The EEOC provided Dempsey a Notice of a Right to Sue letter dated February 6, 2019. Attached hereto and incorporated herein as **<u>Exhibit B</u>** is a true and correct copy of Dempsey's Right to Sue letter that he received from the EEOC.

6.	Plaintiff Gordon Dickman has complied with all jurisdictional prerequisites to action by timely filing a charge of discrimination with the EEOC. Attached hereto and incorporated herein as **<u>Exhibit C</u>** is a true and correct copy of Dempsey's charge of discrimination with the EEOC.

7.	The EEOC provided Dickman a Notice of a Right to Sue letter dated March 1, 2019. Attached hereto and incorporated herein as **<u>Exhibit D</u>** is a true and correct copy of Dempsey's Right to Sue letter that he received from the EEOC.

8.	This Court also has supplemental jurisdiction over all other claims under 28 U.S.C. §1367 because they form part of the same case or controversy as the aforementioned claims.

9.	Venue in this judicial district is proper by virtue of 28 U.S.C. §1391 in that many of the alleged acts were committed in the Eastern District of Wisconsin. Both Dempsey and Dickman worked for Defendant in the Eastern District of Wisconsin. Additionally, the Defendant has its headquarters in the Eastern District of Wisconsin and does business in the Eastern District of Wisconsin.

10.     Dempsey is an adult male residing at 13005 President Avenue, Brookfield, WI 53005. His date of birth is July 28, 1957.

11.     Dickman is an adult male residing at 944 W. Decorah Road, West Bend, WI 53095. His date of birth is July 6, 1958.

12.     Defendant Kohl's, at all material times, is a Wisconsin corporation located in the State of Wisconsin with a principal place of business at N56 W17000 Ridgewood Drive, Menomonee Falls, Milwaukee, Wisconsin 53051.

**FACTS**

**<u>MICHAEL DEMPSEY</u>**

13.     Dempsey was employed by Defendant as a Project Manager and began his employment with Kohl's on October 4, 1988.

14.     Prior to his resignation, Dempsey was placed on a Performance Improvement Plan ("PIP") where he was informed that his services no longer would be needed by Kohl's after 29 years of employment. The PIP was a pretext for Kohl's purposeful discrimination against Dempsey, as the company had already announced that it was seeking a younger demographic of shoppers.

15.     The discrimination against Dempsey began in fall 2016, when Brian Maresh left Kohl's as Dempsey's immediate supervisor at Kohl's.  Maresh and Dempsey worked very well together for years and knew the expectations of the company that they always successfully met. However, within the IT department, there had been shuffling around of positions.

16.     Ram Ananthakrishnan took over for Lynn Kraus and during the same time

period, many job titles changed. Responsibilities after the switch were not clearly defined and the new leadership was unfamiliar with Dempsey's role. The new department leadership did not meet with Dempsey over specific career goals as in the past and began treating him differently.

17. Previously, Dempsey's input had consistently been requested by his colleagues in the construction and administration areas; however, the new leadership in IT kept dismissing his opinions, suggestions, and recommendations. This leadership group did not understand the communication tools that had been built over the years between Dempsey and his team, and claimed he was not doing his job (such as driving the process in daily scrums, weekly meetings, and clear reporting).

18. Dempsey believed that they could not be bothered to see the real process as his supervisors did not read reports or comment when issues were raised. In required bi-weekly one-on-one meetings between Dempsey and Ram Ananthakrishnan, who was often late or failed to show, and when he did he attend, he had no specific coaching to offer or was distracted by other matters.

19. Dempsey often had to correct him on project status reflecting that he was not paying attention to Dempsey's reporting. It came as a complete surprise to Dempsey when he was placed on a 30/60/90-day Progressive Performance Plan.

20. Subsequently, Dempsey learned that Kohl's was doing the same thing (i.e. placing very experienced, competent and highly-compensated current (and now former) Kohl's employees on Progressive Performance Plans), whereby Kohl's either terminated these employees or caused them to resign. This was a pattern created by Kohl's in pushing out or terminating older employees who had longevity with the company and a

thus a commensurate higher salary.

21. Dempsey involuntary resigned from Kohl's on January 24, 2018 and he was 61 years old at the time of his resignation. Dempsey subsequently was replaced by a younger employee. His resignation was a constructive discharge, as he was advised that he would not succeed under the performance plan he was under while at Kohl's.

22. At all material times, Dempsey performed his work duties in accordance with the reasonable expectations of Kohl's.

**GORDON DICKMAN**

23. Dickman was employed by Defendant as a Store Planner and began his employment with Kohl's on March 12, 2007.

24. Dickman's prior position at Kohl's as a Designer was eliminated and he was required to move into a new role as a Level Three Planner. At this point, he was supervised by new (and younger) management as Dickman's previous supervisors had been let go by Kohl's.

25. Although he did not have the required skillset for this new position, Dickman was very willing to give it his all and went into the new position with a positive attitude and never wavered from his steadfast commitment to Kohl's.

26. It soon became overtly obvious that Dickman was set up for failure despite his willingness to learn, the dedication and hard work he continued to demonstrate by coming in early and staying late, as well as his team-player approach.

27. The position of a Level Three Planner typically is held by an employee with over fifteen plus (15+) years of experience as a planner. Accordingly, a learning curve should have been anticipated at the onset of his assignment to this new role. However,

during his time as a Level Three Planner, Dickman was openly criticized for "asking too many questions" and "not taking good notes."

28. While participating in weekly department meetings, he was blatantly accused of not knowing what he was doing despite his written itineraries to the contrary that outlined the specific work agendas and included his input, recommendations, and suggestions. Dickman was treated differently in these meetings because of his age.

29. It was during this time period that Dickman received his first poor performance evaluation while working at Kohl's and later was placed on the 30/60/90 Progressive Performance Plan. Despite his best efforts, Dickman was not able to attain Kohl's ever-increasing unachievable standards and expectations.

30. Unfortunately, Dickman believes that the overall climate at Kohl's changed drastically over the last several years, which is evidenced by a significantly high turnover rate of those company employees with longevity and who earned a higher salary were being placed on this 30/60/90 Progressive Performance Plans and ultimately replaced out of Kohl's only to be replaced by younger employees earning a much lower rate of pay.

31. Dickman involuntary resigned from Kohl's on July 25, 2018 and he was 50 years old at the time of his termination. Dickman was replaced by a younger employee. His resignation was a constructive discharge, as he was advised that he would not succeed under the performance plan he was under while at Kohl's.

32. At all material times, Dickman performed his work duties in accordance with the reasonable expectations of Kohl's. In fact, Dickman consistently received positive annual performance reviews, which was evidenced by the pay increases and promotions he received throughout the years.

## COUNT I – ADEA DISCRIMINATION

33. Dempsey realleges and incorporate by reference the above paragraphs.

34. Kohl's discriminated against Dempsey based on his age and terminated him in reckless disregard of his federally protected rights under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

35. Dempsey has suffered great physical and emotional pain and suffering, lost wages and other employment benefits, attorney's fees and costs, and other damages that he will establish at trial.

## COUNT II – ADEA DISCRIMINATION

36. Dickman realleges and incorporate by reference the above paragraphs.

37. Kohl's discriminated against Dickman based on his age and terminated him in reckless disregard of his federally protected rights under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

38. Dickman has suffered great physical and emotional pain and suffering, lost wages and other employment benefits, attorney's fees and costs, and other damages that he will establish at trial.

## COUNT III – VIOLATION OF WISCONSIN FAIR EMPLOYMENT LAWS
### (Wis. Stat. §§ 111.31 *et seq.*).

39. Dempsey realleges and incorporate by reference the above paragraphs.

40. Kohl's, directly, and through its agents, discriminated against Dempsey because of his age, in violation of Wis. Stat. §§ 111.321, 111.322, 111.325 and 111.33.

41. Kohl's, directly, and through its agents as described above, discriminated against Dempsey because he complained of these discriminatory practices, in violation of Wis. Stat. §111.322 (3).

42.     Dempsey has suffered great physical and emotional pain and suffering, lost wages and other employment benefits, attorney's fees and costs, and other damages that he will establish at trial.

## COUNT IV – VIOLATION OF WISCONSIN FAIR EMPLOYMENT LAWS
### (Wis. Stat. §§ 111.31 *et seq.*).

43.     Dickman realleges and incorporate by reference the above paragraphs.

44.     Kohl's, directly, and through its agents, discriminated against Dickman because of his age, in violation of Wis. Stat. §§ 111.321, 111.322, 111.325 and 111.33.

45.     Kohl's, directly, and through its agents as described above, discriminated against Dickman because he complained of these discriminatory practices, in violation of Wis. Stat. §111.322 (3).

46.     Dickman has suffered great physical and emotional pain and suffering, lost wages and other employment benefits, attorney's fees and costs, and other damages that he will establish at trial.

WHEREFORE, Plaintiffs Dempsey and Dickman respectfully request that this Court:

a.     Enter judgment against Defendants on the causes of action, as alleged, in this Complaint;

b.     Order Defendant Kohl's to reinstate Dempsey and Dickman to their prior employment positions;

c.     Award both Dempsey and Dickman their prospective and retrospective monetary damages;

d.     Award Dempsey and Dickman compensatory and punitive damages in an amount to be determined at trial, including damages for his emotional pain and

suffering, inconvenience, mental anguish, loss of enjoyment of life, and his other non-pecuniary losses;

     e.    Award Dempsey the cost of this action and reasonable attorneys' fees and costs; and

     f.    Award Dempsey such other and further relief as the Court deems just, necessary and proper.

## DEMAND FOR JURY TRIAL

Dempsey and Dickman demand a jury trial on all issues of fact.

Dated this 5th day of May, 2019.

**CADE LAW GROUP LLC**

By: s/Nathaniel Cade, Jr.
    Nathaniel Cade, Jr.
    P.O. Box 170887
    Milwaukee, WI 53217
    (414) 255-3802 (phone)
    (414) 255-3804 (fax)
    nate@cade-law.com

Attorneys for Plaintiffs Michael Dempsey and Gordon Dickman